1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RICKY LEE COBBS,

11            Petitioner,                    No. CIV S-02-1529 MCE JFM P

12        vs.

13    TOM L. CAREY, Warden, et al.,

14            Respondents.                  FINDINGS & RECOMMENDATIONS

15    _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction on

18    charges of street terrorism and first-degree murder for the benefit of a street gang, with use of a

19    firearm.  He seeks relief on the grounds that: (1) the trial court erred in denying his request for a

20    "claim-of-right" jury instruction; (2) there is insufficient evidence the shooting was the natural

21    and probable consequence of an unarmed assault; (3) if the evidence is not insufficient as a

22    matter of law, the trial court erred in denying his request for a jury instruction to the effect that

23    the shooting was not a natural and probable consequence of the target act if it was the

24    independent act of one of the participants; (4) the jury instructions improperly permitted the jury

25    to consider whether the crime of murder in the abstract is a natural and probable consequence of

26    the crime of assault in the abstract; (5) the natural and probable consequence doctrine improperly

1

1  permits conviction based on ordinary negligence; (6) the natural and probable consequence

2  doctrine creates an unconstitutional presumption; (7) the trial court erred in admitting expert

3  testimony on petitioner's state of mind and guilt of the offenses; (8) the trial court erred in

4  denying his motion to strike his prior juvenile adjudication; and (9) he was prejudiced by denial

5  of the right to a continuous preliminary hearing.  Upon careful consideration of the record and

6  the applicable law, the undersigned will recommend that petitioner's application for habeas

7  corpus relief be denied.

8                    PROCEDURAL AND FACTUAL BACKGROUND[1]

9       At trial with codefendant Undrey Darnel Turner, the prosecution
        argued [petitioner] was guilty of first degree murder on either of
10      two theories: felony murder based on attempted robbery, and
        murder as the natural and probable consequence of assault and
11      battery.

12      The jury convicted [petitioner] of first degree murder in count one
        (Pen. Code, § 187),[2] without indicating the theory on which it
13      based its verdict.  It also found true allegations the murder was
        committed for the benefit of a criminal street gang (§ 186.22, subd.
14      (b) (1)), and [petitioner] was armed with a firearm (§ 12022, subd.
        (a) (1)).  The jury found [petitioner] guilty of street terrorism in
15      count two.  (Pen. Code, § 186.22, subd. (a).)  The court sentenced
        [petitioner] to an aggregate term of 53 years to life in prison.

16
                                    * * *
17

18      Diane King lived at 330 West Magnolia in Stockton with her five
        adult daughters – Shaun, Tachelle, Willette, Carriel, and Shalia –
19      and their children.[3]  Kenny Williams, Willette's fiancé, had been
        living with the Kings for approximately two months.  Shavonn
20      Bragg and her daughter were also staying at the home.  The Kings
        knew [petitioner] because he was Diane's sister's nephew, and
21      dated Bragg's first cousin.  Bragg had seen [petitioner] and
        Williams fighting at [petitioner's] birthday party a few weeks
22      before.

23       [1]  This statement of facts is taken from the April 19, 2001 opinion by the California Court
         of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-5, appended as Exhibit
24       A to Respondent's Answer, filed on February 20, 2003.

25       [2]  Undesignated statutory references are to the Penal Code.

26       [3]  For clarity, we refer to Diane and her daughters by their first names.

                                       2

[Petitioner] knocked on Diane's door around 3:00 a.m. on September 13, 1997. Williams and Bragg were watching television in the living room. [Petitioner] was drunk, and asked them to drive him home. While preparing to leave with Bragg, [petitioner] discovered his gun was missing. He looked for the gun in the house, then accused Williams of taking it. Williams denied having the gun, and told [petitioner] to leave. The Kings locked the door after [petitioner] left. [Petitioner] had a "tantrum" on the porch, kicked the door, and threw things around. He yelled, "Somebody got my gun," and "I'm going to get this house. I'm going to shoot this house up." Diane called the police, but [petitioner] left before they arrived.

Later the same morning, [petitioner] told friends that his gun was missing. [Petitioner] said "he didn't know where he left it or what he did with it because he was drunk." However, he wanted to talk to somebody about getting it back. The group of people who gathered outside Filbert Arms Apartments started teasing [petitioner] about Williams beating him up at the party. One commented, "If you go over [to where Williams lives], the person who has [petitioner's] gun might blast you all." [Petitioner] and Sam Grim pumped up the crowd, saying "Let's go."

James "Scratch" Hopkins was sitting in front of the Madison Arms Apartments, around the corner from the King home. [Petitioner] approached Hopkins with a group of approximately 10 young men. Several, including [petitioner], were later identified by an expert on criminal street gangs as members of the East Coast Crips. [Petitioner] asked Hopkins if he knew anything about the missing gun. Hopkins denied having it. He then retrieved a gun from his apartment, and told his girlfriend to lock the door. Hopkins saw Aaron Hargrove, one of the men with [petitioner], take a Mac-11 out of its case, and load it. Eventually, the focus shifted away from Hopkins.

The group started walking toward the King home with [petitioner] in the lead. Some stayed on the porch, and others, including [petitioner] and codefendant Turner, went inside. Williams and Bragg were in the northeast bedroom watching a football game on television. Bragg saw [petitioner] walk from the kitchen toward the bedroom, saying, "Where is my gun?" [Petitioner], Turner, Hargrove, Grim, and Larry Fullard entered the room as Williams started to get out of bed. They socked and kicked Williams, who fell to the floor without swinging back. Williams screamed that he did not have [petitioner's] gun. Grim testified he and Turner tried to stop Hargrove when he walked in and pointed a gun at Williams. Hargrove started to leave, then turned and shot Williams in the

/////

/////

3

1   chest from a distance of two feet.  Williams was pronounced dead
    shortly after he arrived at the emergency room.
2

3   (People v. Ricky Lee Cobbs, slip op. at 3-5.)

4                                  ANALYSIS

5   I.  Standards for a Writ of Habeas Corpus

6           Federal habeas corpus relief is not available for any claim decided on the merits in

7   state court proceedings unless the state court's adjudication of the claim:

8           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
9           determined by the Supreme Court of the United States; or

10          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
11          State court proceeding.

12  28 U.S.C. § 2254(d).

13          Under section 2254(d)(1), a state court decision is "contrary to" clearly

14  established United States Supreme Court precedents "if it 'applies a rule that contradicts the

15  governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are

16  materially indistinguishable from a decision'" of the  Supreme Court and nevertheless arrives at

17  different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362,

18  405-406 (2000)).

19          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

20  habeas court may grant the writ if the state court identifies the correct governing legal principle

21  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

22  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

23  simply because that court concludes in its independent judgment that the relevant state-court

24  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

25  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

26  /////

                                          4

1  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

2  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3        The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

5  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

6  habeas court independently reviews the record to determine whether habeas corpus relief is

7  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

8        All of the claims contained in the instant petition were raised on direct appeal in

9  the California Court of Appeal, which issued a reasoned decision on the claims.  (Answer, Exs.

10  A, B.)  The California Supreme Court summarily denied petitioner's claims on petition for

11  review.  (Answer, Ex. B.)  Accordingly, the opinion of the California Court of Appeal provides

12  the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

13  II.  Petitioner's Claims

14        A.  Jury Instruction Error

15        Petitioner raises several claims of jury instruction error.  After setting forth the

16  applicable legal principles, the court will analyze these claims in turn below.

17            1.  Legal Standards

18        In general, a challenge to jury instructions does not state a federal constitutional

19  claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

20  U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to

21  warrant federal habeas relief, challenged jury instructions "cannot be merely 'undesirable,

22  erroneous, or even "universally condemned,"' but must violate some due process right

23  guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (1988)

24  (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner

25  must demonstrate "that an erroneous instruction'so infected the entire trial that the resulting

26  conviction violates due process.'"  Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d

1   299, 301 (9th Cir. 1987)).  See also Estelle, 502 U.S. at 72.  In making its determination, this

2   court must evaluate the challenged jury instructions "'in the context of the overall charge to the

3   jury as a component of the entire trial process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v.

4   Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is to a refusal or failure to

5   give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an

6   incomplete instruction, is less likely to be prejudicial than a misstatement of the law."

7   Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte v. Stewart, 111 F.3d 616,

8   624 (9th Cir. 1997).

9                           2.  Instruction on Claim-of-Right

10          As explained above, one of the prosecution theories was that petitioner was guilty

11  of first degree felony murder on the basis that the homicide occurred during the commission of

12  an attempted robbery of the gun.  Petitioner's defense to this theory of the case was that he was

13  merely trying to reclaim his own property; he had no intent to steal the gun because it belonged to

14  him.  He requested the following jury instruction on "claim of right," which he argued would

15  have negated the finding of intent to commit a robbery:

16              The defendant's honest belief, even if mistakenly held, that [he]
17              [she] had a right or claim to the property taken negates the
                felonious intent necessary to convict [him] [her] of [robbery]
18              [burglary] [or] theft.

19              The defendant need not show the claim of right was reasonable.
                An unreasonable belief that [he] [she] had a legal right to take the
20              property will suffice so long as the claim was made in good faith.

21              If the evidence raises a reasonable doubt as to whether defendant
                acted under a bona-fide belief in a right or claim to the property
22              you must find that defendant did not form the necessary felonious
                intent.

23
24  (Clerk's Transcript on Appeal (CT) at 614.)  The trial court declined to give this instruction.

25          Petitioner contends that the trial court's failure to give the "claim of right" jury

26  instruction relieved the prosecution of proving the element of intent beyond a reasonable doubt,

6

1   in violation of <u>Francis v. Franklin</u>, 471 U.S. 307 (1985) and <u>Sandstrom v. Montana</u>, 442 U.S. 510

2   (1979).  He also claims that the omission of this jury instruction prevented him from presenting

3   his defense that he the lacked the intent required for a guilty finding of felony murder.  <u>See</u>

4   <u>United States v. Burt</u>,  410 F.3d 1100, 1103 (9th Cir. 2005) ("[a] defendant is entitled to

5   instructions relating to a defense theory for which there is any foundation in the evidence, even

6   though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility").  Finally,

7   relying on <u>Conde v. Henry</u>, 198 F.3d 734 (9th Cir. 1999), petitioner argues that the trial court's

8   error in refusing to give the requested jury instruction is reversible per se.

9           In its decision denying petitioner's claim in this regard, the California Court of

10   Appeal noted the extensive evidence in this case that petitioner was trying to retrieve his own

11   gun when he went to the King residence and that he "acted with the bona fide, subjective belief

12   Williams had the gun that belonged to him."  (Opinion at 7.)  Based on this evidence, the

13   appellate court concluded that the trial court erred in refusing to instruct the jury on the "claim-of-

14   right defense."  (<u>Id</u>. at 8.)  In reaching this decision, however, the court noted as follows:

15           It has long been the rule in this state and generally throughout the
        country that a bona fide belief, even though mistakenly held, that
16      one has a right or claim to the property negates felonious intent.
        [Citations.] (<u>People v. Barnett</u> (1998) 17 Cal.4th 1044, 1143.)
17      However, a claim-of-right defense is limited to "forcible takings
        intended to recover specific personal property in which the
18      defendant in good faith believes he has a bona fide claim of
        ownership or title."  (<u>People v. Tufunga</u> (1999) 21 Cal.4th 935,
19      956.)  Its availability is also limited by policy considerations where
        the claim to the property is "founded in a 'notoriously illegal'
20      transaction."  (<u>Id</u>. at p. 954, fn. 5, citing <u>People v. Hendricks</u>
        (1988) 44 Cal.3d 635, 642 [fee for prostitution]; <u>People v. Gates</u>
21      (1987) 43 Cal.3d 1168, 1182 [proceeds from a forgery ring]; and
        <u>People v. Johnson</u> (1991) 233 Cal.App.3d 425, 457-458 [payment
22      for illegal drugs].)  "'[A] trial court is not required to instruct on a
        claim-of-right defense unless there is evidence to support an
23      inference that [the defendant] *acted* with a subjective belief he or
        she had a lawful claim on the property.'"  (<u>People v. Barnett</u>, <u>supra</u>,
24      at p. 1145, emphasis in original.)

25

26   /////

1   (Id. at 7.)  The appellate court also concluded that the trial court's error was harmless under the

2   facts of this case.  The court reasoned as follows:

3         Relying on Conde v. Henry, (9th Cir. 1999) 198 F.3d 734,
          [petitioner] says the error in this case is reversible per se because
4         [petitioner] "could not argue claim of right as a valid legal theory
          and was refused a jury instruction on this issue which could have
5         eliminated a finding of robbery and thus felony murder."  The court
          in Conde v. Henry acknowledged the general rule set forth in
6         Neder v. United States, supra, 527 U.S. 1 [144 L.Ed.2d 35], but
          found: "Here, the trial court improperly precluded Conde's
7         attorney from making closing argument explaining the defendant's
          theory of the case, it refused to instruct the jury on the defendant's
8         theory, and, over the defendant's objection, it gave jury instructions
          that did not require that the jury find every element of the offense.
9         *Together, these errors deprived the petitioner of effective*
          *assistance of counsel, due process and trial by jury on every*
10        *element of the charged crime."*  (Conde v. Henry, supra, at p. 741,
          emphasis added.)  In the case before us, the court allowed defense
11        counsel to argue [petitioner] lacked the intent to steal, and he did
          so.  [Petitioner] does not challenge the jury instructions given on
12        felony murder or intent to steal.  We therefore reject as meritless
          [petitioner's] argument this case involves more than simple
13        instructional error subject to the Chapman analysis.

14        Based on this record, we conclude the error in refusing to instruct
          the jury on the claim-of-right defense was harmless beyond a
15        reasonable doubt, that is, that "the guilty verdict actually rendered
          in this trial was surely unattributable to the error."  (Sullivan v.
16        Louisiana (1993) 508 U.S. 275, 279 [124 L.Ed.2d 182, 189],
          emphasis in original; Chapman v. California, supra, 386 U.S. at p.
17        24 [17 L.Ed.2d at p. 711].)  The jury found true the allegation in
          count one that [petitioner] committed murder "for the benefit of, at
18        the direction of, and in association with a criminal street gang" in
          violation of section 186.22, subdivision (b) (1), and found
19        [petitioner] guilty in count two of street terrorism in violation of
          section 186.22, subdivision (a).  In addition, the court found true
20        the allegation [petitioner] was convicted as a juvenile of shooting
          at an inhabited dwelling in violation of section 246, a prior felony
21        conviction within the meaning of section 667, subdivision (d), and
          section 1170.12, subdivision (b).  By virtue of his conviction of an
22        offense listed in Welfare and Institutions Code section 707,
          subdivision (b), [petitioner] was not permitted to "own, or have in
23        his . . . possession or under his . . . custody or control any firearm
          until the age of 30 years."  (§ 12021, subd. (e).)  He was 26 years
24        old when he committed the current offenses.  Thus, [petitioner's]
          claim to the gun was founded in his notoriously illegal activities,
25        and he was not entitled to invoke the claim-of-right defense.  (See
          People v. Hendricks, supra, 44 Cal.3d at p. 642; People v. Gates,

26

1          supra, 43 Cal.3d at p. 1182; and People v. Johnson, supra, 233
         Cal.App.3d at pp. 457-458.)

2

3 (Id. at 9-11.)

4        This court accepts the state courts' conclusion that the trial court erred in refusing

5 to give petitioner's requested "claim-of-right" jury instruction.  This court also agrees that the

6 error is subject to harmless error analysis.  Conde v. Henry is not a United States Supreme Court

7 case.  Further, Conde was evaluated under the less stringent pre-AEDPA standards.  Id., 198 F.3d

8 at 738 ("AEDPA's restrictions do not apply because the original petition was filed before the

9 effective date of AEDPA").  As explained above, a federal writ of habeas corpus will issue only

10 when the state court decision is "contrary to, or involved an unreasonable application of, clearly

11 established federal law as determined by the Supreme Court of the United States."  28 U.S.C. §

12 2254(d).  A federal habeas court "can no longer reverse a state court decision merely because that

13 decision conflicts with Ninth Circuit precedent on a federal Constitutional issue."  Duhaime v.

14 Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).  Accordingly, Conde does not dictate the result in

15 this case.

16        In any event, as explained by the state appellate court, the facts in Conde are

17 distinguishable from the facts of this case.  Here, unlike the situation in Conde, petitioner's

18 counsel was allowed to argue his defense that petitioner lacked the intent to steal because he

19 believed he owned the gun.  (See Reporter's Transcript on Appeal (RT) at 1944-47, 1798-99.)

20 Further, unlike Conde, the jury instructions at petitioner's trial did not relieve the jury from

21 finding every element of the offense.  Accordingly, Conde is not dispositive and the trial court's

22 jury instruction error is subject to harmless error analysis.  Neder, 527 U.S. 1, 4 (1999) (state

23 court's error in giving a jury instruction that omitted an element of the offense subject to

24 harmless error analysis).

25        In order to grant habeas relief where a state court has determined that a

26 constitutional error was harmless, a reviewing court must determine: (1) that the state court's

1  decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error

2  precedent, and (2) that the petitioner suffered prejudice under Brecht v. Abrahamson, 507 U.S.

3  619 (1993) from the constitutional error.  Inthavong v. LaMarque, 420 F.3d 1055, 1059 (9th Cir.

4  2005).  Because both of these tests must be satisfied before relief can be granted, a habeas court

5  may address them in any order.  Id. at 1061.

6         On collateral review, an error is not "harmless" if it "had substantial and injurious

7  effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.  In determining

8  whether an error is harmless, the question is "what effect the error had or reasonably may be

9  taken to have had upon the jury's decision.'"  Wade v. Calderon, 29 F.3d 1312, 1322 (9th

10 Cir.1994) (quoting Brecht, 507 U.S. at 642-43 (Stevens, J., concurring)), overruled on other

11 grounds by Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 815 (9th Cir.2003).  An error is not

12 harmless if a reviewing court is "in grave doubt" as to whether the error had "substantial and

13 injurious effect or influence."  O'Neal v. McAninch, 513 U.S. 432, 435 (1995)

14        As explained by the California Court of Appeal, the trial court's error in refusing a

15 jury instruction on petitioner's "claim-of-right" defense could not have had substantial and

16 injurious effect or influence on the verdict because the defense was not available to petitioner

17 under California law.  Pursuant to California law, a criminal defendant does not have a legitimate

18 claim of right to personal property if the property belongs to him because of his commission of

19 illegal acts.  See Hendricks, 44 Cal.3d at 642; Gates, 43 Cal.3d at 1182.  Petitioner's jury found

20 that petitioner committed the murder in furtherance of a criminal street gang.  As such,

21 petitioner's asserted "right" to the gun was rooted in activities that were notoriously illegal.

22 Further, petitioner was not legally entitled to possess a gun at the time of the crime because of his

23 prior conviction of shooting at an inhabited dwelling.  (Opinion at 10.)  Under California law, as

24 explained by the state appellate court, a claim-of-right defense was not available to petitioner

25 under these circumstances.  (Id. at 10-11.)

26 /////

1    In sum, the trial court's refusal to give a "claim-of-right" jury instruction did not

2  eliminate the duty of petitioner's jurors to find beyond a reasonable doubt that petitioner

3  harbored the intent to steal, did not result in prejudice to petitioner, and did not violate

4  petitioner's right to present a defense.  Cf. Burt, 410 F.3d at 1104 (conviction reversed on appeal

5  where trial court's failure to instruct on defendant's theory of defense resulted in prejudice

6  because, without the instruction, jury was required to find defendant guilty).  The decision of the

7  California Court of Appeal to the same effect is not contrary to or an unreasonable application of

8  federal law.  Accordingly, petitioner is not entitled to relief on this claim.

9            3.  Doctrine of Natural and Probable Consequences

10    The other prosecution theory at petitioner's trial was that Williams's murder was

11  the natural and probable consequence of an assault and battery that petitioner aided and abetted.

12  Petitioner raises a number of claims challenging his conviction pursuant to this theory of liability.

13  The court will evaluate these claims in turn below.

14            A.  Insufficient Evidence that the Shooting was the Natural and Probable

15  Consequence of an Unarmed Assault

16    Petitioner first argues that the evidence at trial was insufficient to support the

17  prosecution's theory that he was guilty of murder because he aided and abetted an assault on

18  Williams.  Petitioner argues, in essence, that the evidence does not support a finding that he

19  intended any crime or that he had any reason to know Hargrove had a gun or would use a gun to

20  shoot Williams.  Petitioner states that he went over to the Williams residence simply to look for

21  his gun or to try and buy it back and that "there was never a plan to commit any crimes or do

22  anything to Kenny Williams."  (Traverse at consecutive p. 19.)  He further explains:

23            There was no evidence that [petitioner] was aware that Hargrove
              would take it upon himself to obtain a gun or any evidence that
24            [petitioner] knew that Hargrove did so and brought it to the scene.
              To the contrary, the evidence was that the various persons involved
25            in the physical assault on Williams went unarmed to the King
              house, used only their fists and feet resulting only in bruises, and

26

11

1     that they tried to verbally and physically prevent Hargrove from
2     using the weapon once he entered the room with the gun displayed.

3 (Pet., Ex. A at 24.)

4     The Due Process Clause of the Fourteenth Amendment "protects the accused

5 against conviction except upon proof beyond a reasonable doubt of every fact necessary to

6 constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

7 is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

8 favorable to the prosecution, any rational trier of fact could have found the essential elements of

9 the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

10 Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

11 under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

12 a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

13 443 U.S. at 318).  A petitioner for a federal writ of habeas corpus "faces a heavy burden when

14 challenging the sufficiency of the evidence used to obtain a state conviction on federal due

15 process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n .13 (9th Cir. 2005).  In order

16 to grant the writ, the habeas court must find that the decision of the state court reflected an

17 objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

18     The court must review the entire record when the sufficiency of the evidence is

19 challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

20 vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

21 the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

22 reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

23 fact could draw conflicting inferences from the evidence, the court in its review will assign the

24 inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir.1994).  The

25 relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

26 the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th

1   Cir.1991).  "The question is not whether we are personally convinced beyond a reasonable doubt.

2   It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v.

3   Borg, 945 F.2d 303, 306 (9th Cir. 1991).

4               The federal habeas court determines sufficiency of the evidence in reference to the

5   substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324

6   n.16; Chein, 373 F.3d at 983.  In California,

7               An aider and abettor is a person who: (1) acting with knowledge of
            the unlawful purpose of the perpetrator; and (2) with the intent or
8           purpose of committing, encouraging, or facilitating the commission
            of the offense; (3) by act of advice aids, promotes, encourages, or
9           instigates the commission of the crime.  (People v. Beeman (1984)
            35 Cal.3d 547, 561l) A defendant may be held criminally
10          responsible as an accomplice not only for the crime he intended to
            aid and abet (the target crime), but also for any other crime that is
11          the natural and probable consequence of the target crime.  (People
            v. Prettyman (1996) 14 Cal.4th 248, 261.)  Where the allegations
12          raise the natural and probable consequences doctrine, the trier of
            fact must find two elements in addition to those set forth in the test
13          for aider and abettor liability: (1) that the perpetrator committed an
            offense other than the target crime; and (2) the offense committed
14          by the perpetrator was a natural and probable consequence of the
            target crime that the defendant aided and abetted.  (People v.
15          Prettyman, aupra, at p. 262.)  However, if the jury finds a
            defendant encouraged a codefendant to commit an assault, but had
16          no reason to believe the codefendant would use a deadly weapon to
            commit the assault, it may not find that the murder was a natural
17          and probable consequence of the assault.  (Id. at p. 267; People v.
            Butts (1965) 236 Cal.App.2d 817, 836-837.)  "'The question of
18          what constitutes a natural and probable consequence is one of fact
            for the jury.'" (People v. Luparello (1986) 187 Cal.App.3d 410,
19          443, citation omitted.)

20   (Opinion at 11-12.)  "The test for an aider and abettor's liability for collateral criminal offenses ...

21   depends upon all of the facts and circumstances surrounding the particular defendant's conduct."

22   People v. Nguyen, 21 Cal.App.4th 518, 535 (1993).  The natural and probable consequences

23   doctrine uses an objective test.  Liability "is measured by whether a reasonable person in the

24   defendant's position would have or should have known that the charged offense was a reasonably

25   foreseeable consequence of the act aided and abetted."  Id. at 535.

26   /////

The California Court of Appeal concluded that "a reasonable jury could find [petitioner] was an instigator and leader in the attack on Williams, and knew Hargrove had a loaded weapon.  Moreover, in reaching a guilty verdict, the jury could elect to disregard as not credible Grim's self-serving testimony that he and codefendant Turner tried to stop Hargrove from using the gun."  (Opinion at 14.)  This conclusion is not an unreasonable application of Jackson and Winship to the facts of this case.  Juan H., 408 F.3d at 1275.  As recited by the California Court of Appeal,

> When [petitioner] told his fellow gang members someone had taken his gun, they began teasing him about the earlier fight with Williams at [petitioner's] birthday party.  Grim wanted to get the gun, and was upset [petitioner] was not doing anything.  Michael Rocquemore advised [petitioner], "Hey, you can't go get a gun with no gun."
>
> [Petitioner] first approached Hopkins, and asked if he knew anything about the gun.  Hopkins said he did not.  Hopkins saw Hargrove with a black gun case.  Hopkins got a gun from his apartment.  When he returned to the group, he saw Hargrove take a Mac-11 out of the gun case and load it.  Rocquemore and codefendant Turner were standing nearby, and [petitioner] was going the other way.
>
> Hopkins told the investigating officer that [petitioner] pointed out where Williams lived, and led the group in that direction.  [Petitioner], Turner, Grim, and Fullard had forced Williams to the floor with their blows, when Hargrove pulled out his gun and shot him.  Rocquemore affirmed at trial that if someone "disrespects" the gang, they are dealt with harshly.  Sometimes this involves a beating.  Sometimes it involves being shot, and killed "[i]f it get[s] that far, . . ."

(Opinion at 13-14.)[4]

When viewed in the light most favorable to the prosecution, this evidence was sufficient to allow a rational trier of fact to conclude that Williams's murder was the natural and

---

[4]  The appellate court also stated that "Grim and [petitioner] began pumping up the group, saying "Let's go."  (Id. at 13.)  Petitioner correctly points out that the record actually reflects that only Grim "pumped up" the group.  (RT at 1283-84, 1420.)  However, even without evidence that petitioner "pumped up" the crowd, the Court of Appeal's ultimate conclusion is not an unreasonable application of Jackson.

1  probable consequence of an assault that petitioner aided and abetted.  Reasonable jurors could

2  have found that petitioner intended to commit an assault upon Williams when he went to his

3  residence and that he knew Hargrove carried a gun and could use it on Williams.  The fact that

4  petitioner can construct from the evidence alternative scenarios at odds with the verdict does not

5  mean that the evidence was insufficient.  The appellate court's ruling that there was sufficient

6  evidence to support the verdict is not objectively unreasonable.  Accordingly, petitioner is not

7  entitled to relief on this claim.

8  B.  <u>Trial Court's Denial of Requested Jury Instructions</u>

9  Petitioner's next claim is that even if the evidence is sufficient to support his

10  murder conviction on a theory that he aided and abetted an assault, he is still entitled to habeas

11  corpus relief because the trial court erred in denying his request for special jury instructions.

12  Specifically, petitioner argues that the trial court improperly refused to "instruct the jury on the

13  theory of defense that the shooting was not a natural and probable consequence of the target act if

14  it was an independent act of one of the participants."  (Pet., Ex. A at 28.)

15  The California Court of Appeal fairly explained the background to this claim as

16  follows:

17  In this case, [petitioner] proposed the following instructions at
    trial:

18

19  Defense Instruction No. 1: "Homicide is not, as a matter of law, a
    natural and probable consequence of a gang attack."

20  Defense Instruction No. 4: "You may not find Mr. Cobbs guilty as
    an aider and abettor of homicide unless a reasonable person in the

21  same position as Mr. Cobbs, and under like circumstances, would
    have recognized that homicide was a natural and probable

22  consequence of the act aided and abetted."

23  Defense Instruction No. 5: "Mr. Cobbs may not be found guilty of
    aiding and abetting a homicide as a natural and probable

24  consequence of the target offense if the homicide was a fresh and
    independent product of the mind of one of the participants, outside

25  of, foreign to, the common design."

26  /////

15

1
2
3
4
5
6
7

An "Addendum" to CALJIC No. 3.02: "You may not find the defendant guilty as an aider and abettor unless a reasonable person under like circumstances would have recognized that the crime charged was a natural and probable consequence of the act aided and abetted.  In making this determination, you may only consider those circumstances which the defendant knew at the time that the act[s], upon which the aiding and abetting allegation is based, were committed.

"A criminal act is not a natural and probable consequence of the target offense if the act was a fresh and independent product of the mind of one of the participants, outside of, or foreign to, the common design."

8
9
10
11
12
13
14

The court denied [petitioner's] request, reiterating its reluctance to "monkey[] with CALJIC."  It instructed the jury on aiding and abetting and accomplice liability in accordance with CALJIC Nos. 3.01 96th ed. 1996), 3.02 (1997 rev.), and 3.14 (6th ed. 1996). Specifically, the court informed the jury that "[m]erely assenting to or aiding or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of committing, encouraging or facilitating the commission of the crime is not criminal.  Thus, a person who assents to or aids or assists in the commission of a crime without that knowledge and without that intent or purpose is not an accomplice in the commission of a crime."

15  (Opinion at 15-17.)  The appellate court concluded that these jury instructions "fully and fairly

16  informed the jury of the applicable law."  (Id. at 17.)

17           Petitioner argues that the trial court was required to give his requested jury

18  instructions because "sufficient evidence was presented at trial to support instructions on

19  [petitioner's] theory of defense, that the shooting was Hargrove's independent act, and the

20  negating effect that this may have on the natural and probable consequences doctrine, on which

21  [petitioner's] guilt was allegedly based."  (Pet., Ex. A at 30.)  This court agrees with the

22  California Court of Appeal that the jury instructions given at petitioner's trial, set forth above,

23  fairly supported petitioner's defense theory that the shooting was not a natural and probable

24  consequence of an assault that petitioner aided and abetted because it was an "independent act"

25  of Hargrove.  Under the circumstances presented by this case, petitioner has failed to meet his

26  "heavy burden" to show that the omission of the requested jury instructions rendered his trial

16

fundamentally unfair.  Petitioner has also failed to cite a United States Supreme Court case which holds that the absence of jury instructions informing the jury that the act of a perpetrator cannot be a natural and probable consequence of a target act if it was "independent" renders a criminal trial fundamentally unfair.  Accordingly, the decision of the state courts with respect to this claim is not contrary to established Supreme Court precedent and may not be set aside.  Petitioner is not entitled to relief on this claim.

### C.  Abstract Findings

Petitioner's next claim is that CALJIC No. 3.02, given at his trial, improperly permitted the jury to consider whether the crime of murder in the abstract is a natural and probable consequence of the crime of assault in the abstract, instead of focusing on the specific facts of this case.[5]  He argues that this jury instruction

> erroneously permitted the jury to make its "natural and probable consequences" determination based on whether the crime of murder in the abstract is a natural and probable consequence of the crime of assault in the abstract.  The error was especially prejudicial because the People's expert testified and the prosecutor argued that murder was a purpose of gangs and a foreseeable consequence of gang assault generally.  In contrast, the defense case rested solely on the specific circumstances of this case.  The court's error diverted the jury from a full consideration of those specific facts of this case where the primary acts involved an unarmed assault which resulted in minor bruising, followed by an independent act by Hargrove, who alone was armed, unbeknownst to Cobbs.  Cobbs and the others beating up Williams in the bedroom did not aid and abet the eventual shooting; instead, they attempted to stop it when the gun was seen, although they were unsuccessful in preventing Hargrove from shooting.  Yet the court's instructions, coupled with the gang expert's testimony and the absence of defense requested instructions allowed Cobbs to be

---

[5]  The exact jury instruction given at petitioner's trial states, in relevant part: "In order to find the defendant guilty of the crime of murder as charged in Count 1, you must be satisfied beyond a reasonable doubt that:

"1.  The crime of assault or battery was committed;
"2.  That the defendant aided and abetted those crimes;
"3.  That a co-principal in that crime committed the crime of murder; and
"4.  That the crime of murder was a natural and probable consequence of the commission of the crimes of assault or battery."  (CT at 508.)

1        convicted of the abstract crime of gang murder, without
consideration of his personal culpability under the facts of this
2        case.

3  (Pet., Ex. B at 20-21.)

4        The California Court of Appeals rejected this claim on the grounds that the jury

5  instructions, as a whole, correctly apprised the jurors that they were required to focus on the facts

6  of this case and not on the crimes of murder and assault in the abstract.  The appellate court

7  reasoned as follows:

8        The Supreme Court described the scope of the trial court's duty to
instruct on the natural and probable consequences doctrine in
9        People v. Prettyman, supra, 14 Cal.4th at page 254: "We conclude
that when the prosecutor relies on the 'natural and probable
10       consequences' dostrine, the trial court must identify and describe
the target crimes that the defendant might have assisted or
11       encouraged.  An instruction *identifying* target crimes will assist the
jury in determining whether the crime charged was a natural and
12       probable consequence of some other criminal act.  And an
instruction *describing* the target crimes will eliminate the risk that
13       the jury will engage in uninformed speculation with regard to what
types of conduct are criminal."  (Emphasis in original.)
14

15       In the case before us, the court identified the target crimes of
assault and battery in CALJIC No.  3.02, and described them for
16       the jury in accordance with CALJIC Nos.  9.00 (1998 rev.), 16.140
(6th ed.  1996), and 16.141 (6th ed. 1996).  We therefore conclude
17       the court complied with its instructional obligations under People
v. Prettyman.  We also note that """the correctness of jury
18       instructions is to be determined from the entire charge of the court,
not from a consideration of parts of an instruction or from a
19       particular instruction """ (People v. Wilson (1992) 3 Cal.4th 926,
943.)  Here, the court instructed the jury to decide the case based
20       on evidence received in the trial, and not from any other source.

21       Moreover, "[w]e credit jurors with intelligence and common sense
[citation] and do not assume that these virtues will abandon them
22       when presented with a court's instructions."  (People v.
Coddington (2000) 23 Cal.4th 529, 594.)  Thus, after hearing the
23       specific charges against [petitioner], listening to the detailed
testimony regarding the events of September 13, 1997, in a lengthy
24       trial, and receiving the court's instructions, the jury understood it
was required to determine whether Williams's murder was the

25  /////

26  /////

1   natural and probable consequence of the assault and battery
2   actually planned and inflicted on the victim.

3   (Opinion at 18-19.)

4          This court concludes that the giving of CALJIC No. 3.02 at petitioner's trial did

5   not result in a due process violation.  Petitioner's jury was specifically instructed that it should

6   base its decision on the evidence received in the trial and not from any other source.  (CT at 476.)

7   There is no evidence that the jurors misunderstood this instruction or refused to follow it, or that

8   they decided the case based on abstract principles as opposed to the facts of this case.  See Penry

9   v. Johnson, 532 U.S. 782, 799 (2001) ("[w]e generally presume that jurors follow their

10  instructions").  Accordingly, petitioner is not entitled to relief on this claim.

11                 D.  Conviction on a Negligence Standard

12         Petitioner's next claim is that CALJIC No. 3.02, which sets forth the "natural and

13  probable consequences doctrine," improperly permits a criminal conviction based on ordinary

14  negligence, in violation of state and federal due process standards, because "the aider and abettor

15  need not share the perpetrator's mental state or even intend that the crime be committed so long

16  as the perpetrator's commission of the crime was reasonably foreseeable."  (Pet., Ex. A at 40-41.)

17  Citing Hicks v. Oklahoma, 447 U.S. 343 (1980) and Lambert v. California, 355 U.S. 225 (1957),

18  petitioner argues that "both the California and United States Supreme Courts have consistently

19  disapproved on the imposition of criminal liability based upon a "strict liability" construction of

20  a statute which would permit culpability despite a defendant's ignorance of facts which make an

21  act punishable."  (Id. at 42.)  Petitioner also argues that "the federal constitutional right to fair

22  trial by jury is implicated when the jury is allowed to impose criminal liability without finding all

23  necessary elements of the charge."  (Id. at 43.)  In state court, petitioner relied on People v.

24  Smith, 57 Cal.App.4th 1470, 1474, 1488, wherein the California Court of Appeal for the Third

25  Appellate District held that "an abbreviated version of former CALJIC No. 900 (1994 rev.),

26  which did not distinguish between the "natural and probable consequence" of an act and "intent,"

erroneously directed the jury to impose a negligence standard to the assault element of assault with a deadly weapon."  (Opinion at 19-20.)

The California Court of Appeal rejected petitioner's arguments in this regard with the following language:

> As we explained, the court complied with the obligations for instructing on aider and abettor liability and the natural and probable consequences doctrine as described in People v. Prettyman, supra, 14 Cal.4th at page 254.  Under CALJIC No. 3.02 the jury must find beyond a reasonable doubt that the defendant aided and abetted the crime of assault and battery.  The court had already defined aiding and abetting in accordance with CALJIC No. 3.01 as follows: "A person aids and abets the commission or attempted commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator; and [¶] (2) *with the intent or purpose of committing, encouraging or facilitating the commission of the offense*, by act or advice, aids, promotes, encourages or instigates the commission of the crime."  (Emphasis added.)  We therefore conclude the instructions in this case properly differentiated between the [petitioner's] intent in performing an act to aid and abet the target crime, and the natural and probable consequences of the target crime.

(Opinion at 20.)

The California Court of Appeal's decision in this regard is not "objectively unreasonable," Lockyer v. Andrade, 538 U.S. 63, 65 (2003), because there is no Supreme Court precedent on point.  No United States Supreme Court case holds that California's "natural and probable consequences doctrine," as set forth in CALJIC 3.02, improperly permits conviction on a negligence standard.[6]  On habeas review, with regard to jury instructions, a reviewing court

---

[6]  In Hicks v. Oklahoma, the United States Supreme Court held that state laws guaranteeing a defendant procedural rights at sentencing may create liberty interests protected against arbitrary deprivation by the Due Process Clause of the Fourteenth Amendment.  447 U.S. at 343, 346.  The court found a due process violation where a state appellate court re-imposed the defendant's original 40-year sentence, even though the sentence was premised upon a state statute that had been declared unconstitutional after defendant's original sentence was imposed, and, without which, the sentence would have been ten years.  In Lambert v. California, the United States Supreme Court held that an ordinance that made it a criminal offense for a convicted felon to remain in the city of Los Angeles for five days without registering with the Chief of Police was violative of due process when applied to a person who had no actual knowledge of the duty to register.  355 U.S. at 225.  Both Hicks and Lambert are factually distinguishable from this case

20

1   must not "engage in a technical parsing of [their] language, ... but instead approach the

2   instructions in the same way that the jury would--with a commonsense understanding of the

3   instructions in the light of all that has taken place at the trial." Johnson v. Texas, 509 U.S. 350,

4   368 (1993) (internal quotations omitted).  As described by the California Court of Appeal, a

5   review of the instructions as a whole reflects that petitioner's jury was instructed that to be guilty

6   as an aider and abettor, he must specifically intend to commit, encourage, or facilitate the

7   commission of the target offense.  In addition, the jury was correctly instructed on the meaning of

8   the "natural and probable consequences" doctrine.  The jury instructions do not eliminate the

9   need to find intent, do not expressly allow conviction upon proof of mere negligence, and do not

10   carry that implication when read as a whole.  Upon independent review, this court concludes that

11   use of CALJIC No. 3.02 did not render petitioner's trial fundamentally unfair.  Accordingly, this

12   claim should be denied.[7]

13                   E.  Unconstitutional Irrebuttable Presumption

14           Petitioner's next claim is that application of the "natural and probable

15   consequences" doctrine to his case violated his Fourteenth Amendment due process rights

16   because it created an unconstitutional presumption which relieved the prosecution of its burden

17   to prove the element of intent (malice) beyond a reasonable doubt and allowed the jury to convict

18   him based on a mere negligence standard.  He explains his claim as follows:

19           The "natural and probable consequences" doctrine acts as a
                presumption of the element of malice for murder.  It defines an
20           objective standard of culpability – the doctrine is based on what a
                reasonable person would foresee as "probable and natural
21           consequences" – and then it uses that standard to conclusively
                impute a higher degree of criminal culpability to a person who may
22           not in fact have foreseen, let alone intended or deliberated on, such

23   _____

24   and do not provide support for petitioner's arguments.

25       [7]  This court also notes that the facts of this case do not give rise to a finding of
     negligence.  Accordingly, the court need not decide whether the "natural and probable
26   consequences" doctrine would have application to a case involving mere negligence.  See United
     States v. Raines, 362 U.S. 17, 21 (1960).

consequences. Thus, in a prosecution for murder, the "natural and probable consequences" doctrine operates as an irrebuttable presumption that a non-killer has malice, even though such a state of mind would not be presumed and would have to be proven in order to convict the actual killer.

* * *

The instructions here had the effect forbidden by the Constitution because they permitted [petitioner] to be convicted of murder without any finding that he in fact intended the death of the victim or even that he was aware that such killing was contemplated by Hargrove or that Hargrove had a gun.

(Pet., Ex. A at 43-44.)[8]

/////

---

[8] Petitioner's jury received the following instruction:

One who aids and abets another in the commission of a crime or crimes is not only guilty of that crime or those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime or crimes originally aided and abetted.

If you find that the original crime that was planned was simple Battery, in order to find the defendant guilty of the crimes of assault with a deadly weapon or a means likely to produce great bodily harm you must be satisfied beyond a reasonable doubt that:

1. The crime or crimes of battery was committed;

2. That the defendant aided and abetted that crime;

3. That a co-principal in that crime committed the crime of battery; and

4. The crime of assault with a deadly weapon by means likely to produce great bodily harm was a natural and probable consequence fo the commission of the crime of battery.

If you find that the original plan was to commit an assault with a deadly weapon or by means likely to produce great bodily harm, then this instruction is not applicable.

(CT at 219.)

1        The California Court of Appeal rejected this claim on direct appeal, stating as

2   follows:

3           In People v. Francisco (1994) 22 Cal.App.4th 1180, 1189, the
            defendant raised a similar argument.  The court affirmed
4           defendant's murder conviction.  Citing People v. Cooper (1991) 53
            Cal.3d 1158, 1162, at footnote 3, it noted that the Supreme Court
5           "has continued to emphasize the ongoing validity of the theory of
            aiding and abetting liability for any reasonably foreseeable offense
6           committed by the person aided and abetted."  (Francisco, supra, at
            p. 1189.)  The court explained that "aiding and abetting is one
7           means under which derivative liability for the commission of a
            criminal offense is imposed.  It is not a separate criminal offense.
8           [Citation.]  As an aider and abettor, it is the intention to further the
            acts of another which creates criminal liability."  (Id. at p. 1190.)
9           A similar theory of derivative liability forms the basis of the
            felony-murder rule, long accepted in this state.  (citation omitted.)

10

11  (Opinion at 21-22.)

12        The state appellate court's interpretation and analysis of the "natural and probable

13  consequences" doctrine, a state court construct, may not be challenged in this federal habeas

14  corpus action.  State courts are "the ultimate expositors of state law," and this court is "bound by

15  the state's construction except when it appears that its interpretation is an obvious subterfuge to

16  evade the consideration of a federal issue."  Peltier v. Wright, 15 F.3d 860, 862 (1994) (quoting

17  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (construing state court judgment)).  See also

18  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (construing state statute); Melugin

19  v. Hames, 38 F.3d 1478, 1482 (9th Cir. 1994) (construing state criminal statute).  There is no

20  evidence of subterfuge here.

21        It is true that a "claim of error based upon a right not specifically guaranteed by

22  the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact

23  so infects the entire trial that the resulting conviction violates the defendant's right to due

24  process."  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d

25  1107 (9th Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v.

26  Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal habeas

1  corpus petition, however, the "error alleged must have resulted in a complete miscarriage of

2  justice." Hill v. United States, 368 U.S. 424, 428 (1962).

3          Petitioner has failed to demonstrate a due process violation.  As explained by the

4  state appellate court, the record reflects that petitioner and approximately ten other men went to

5  the King home with the intention of confronting Williams about petitioner's missing gun.

6  Petitioner had previously threatened to "shoot this house up" and had caused such a disturbance

7  that the residents locked him out of the house and called the police.  Hargrove was carrying a

8  loaded gun.  Petitioner and several other men, including Hargrove, entered the King residence

9  and confronted Williams, socking and kicking him.  During this altercation, Hargrove shot and

10 killed Williams.  A prosecution expert witness testified that petitioner and his co-defendants

11 were gang members, that the killing of Williams was a gang related activity involving retaliation

12 and intimidation, and that acts of gang retaliation could become lethal.  (RT at 941-43, 956-59,

13 962-64, 968.)  Witness Michael Rocquimore affirmed that if someone "disrespects" the gang,

14 they could be shot and/or killed.  Under these circumstances, petitioner's conviction of murder

15 on the theory that it was the natural and probable consequence of an assault he aided and abetted

16 does not constitute a complete miscarriage of justice.

17         Petitioner has also failed to demonstrate that the jury instruction on "natural and

18 probable consequences" created an impermissible mandatory presumption of intent.  Federal due

19 process is violated by jury instructions which use mandatory presumptions to relieve the

20 prosecution's burden of proof on any element of the crime charged.  Francis, 471 U.S. at 314; see

21 also Sandstrom, 442 U.S. at 510.  In general, "[a] mandatory presumption instructs the jury that it

22 must infer the presumed fact if . . . certain predicate facts" are proved.  Francis, 471 U.S. at 314.

23 The due process clause is implicated where the presumed fact is an element of the prosecution's

24 case, because in that situation proof of predicate facts will either remove the presumed element

25 from the State's case altogether or will shift the burden of persuasion on the presumed element to

26 the defendant.  Id. at 317.  In either case, such a presumption operates to relieve the State from its

1  constitutional obligation to prove beyond a reasonable doubt every essential element of the crime

2  charged.  Id. at 313; In re Winship, 397 U.S. at 364.

3              On the other hand, a permissive presumption allows, but does not require, the trier

4  of fact to infer the elemental fact from proof of the basic fact.  County Court of Ulster Cty. v.

5  Allen, 442 U.S. 149, 157 (1979).  In order for such a presumption to pass constitutional muster, it

6  must be said with substantial assurance that "the presumed fact is more likely than not to flow

7  from the proved fact on which it is made to depend."  Leary v. United States, 395 U.S. 6, 36

8  (1968).[9]  Similarly, there must be a "rational connection between the fact proved and the ultimate

9  fact presumed" -- a connection grounded in "common experience."  Tot v. United States, 319

10 U.S. 463, 467-68 (1943).  However, notwithstanding the label ultimately placed on an

11 evidentiary presumption, the ultimate test of its constitutionality remains constant:  "[t]he device

12 must not undermine the fact finder's responsibility at trial, based on evidence adduced by the

13 State, to find the ultimate facts beyond a reasonable doubt."  Ulster Cty., 442 U.S. at 156 (citing

14 In re Winship, 397 U.S. at 364).

15             The jury instruction given at petitioner's trial on "natural and probable

16 consequences" did not instruct the jury that it must find a certain mental state if the specified

17 factors were proven.  Rather, the thrust of the instruction was that the jury could not render a

18 guilty verdict unless the specified factors were established.  In that sense, it did not involve a

19 presumption at all, either mandatory or permissive.  Even assuming the jury instruction involved

20 a presumption, the instruction merely allows, but does not require, the jurors to make a guilty

21 finding if they found the underlying factors true.  It did not instruct the jurors to infer intent or

22 any other element of the crime charged against petitioner.  Accordingly, the instruction did not

23 employ an impermissible mandatory presumption.  This court also notes that petitioner's jury

24

25           [9] Although Leary involved analysis of a statutory presumption, "[t]he reasoning of the
26 statutory inference cases is applicable to analysis of common-law inferences."  Barnes v. United
   States, 412 U.S. 837, 844 n.8 (1973).

1   was instructed that a defendant could not be found guilty unless the prosecution proved him

2   guilty beyond a reasonable doubt.  (CT at 499, 505.)  Accordingly, the instructions at petitioner's

3   trial, considered together, did not permit a rational juror to believe that intent could be found

4   without proof by the prosecution of all elements beyond a reasonable doubt.

5          For all of the reasons explained above, the opinion of the California Court of

6   Appeal rejecting petitioner's claim that the natural and probable consequences doctrine creates an

7   improper presumption is not contrary to or an unreasonable application of federal law, nor is it

8   based on an unreasonable determination of the facts of this case.  Accordingly, petitioner is not

9   entitled to relief.

10          4. Expert Testimony

11          Petitioner claims that the trial court's evidentiary rulings admitting expert

12   testimony on petitioner's state of mind and guilt of the offenses violated his rights to due process

13   and a fair trial.  The California Court of Appeal explained the nature of petitioner's claim in this

14   regard, and the court's ruling thereon, as follows:

15          Evidence Code section 801 provides: "If a witness is testifying as
            an expert, his testimony in the form of an opinion is limited to such
16          an opinion as is:

17          "(a) Related to a subject that is sufficiently beyond common
            experience that the opinion of an expert would assist the trier of
18          fact; and

19          "(b) Based on matter (including his special knowledge, skill,
            experience, training, and education) perceived by or personally
20          known to the witness or made known to him at or before the
            hearing, whether or not admissible, that is of a type that reasonably
21          may be relied upon by an expert in forming an opinion upon the
            subject to which his testimony relates, unless an expert is
22          precluded by law from using such matter as a basis for his
            opinion."

23
            Accordingly, expert testimony is admissible if it relates to a subject
24          beyond the jurors' common experience even though it
            encompasses the ultimate issue in the case.  (People v. Olguin
25          (1994) 31 Cal.App.4th 1355, 1371; Evid. Code, § 805; see People
            v. Torres (1995) 33 Cal.App.4th 37, 45.)  Thus, where a gang
26          enhancement is alleged, expert testimony is admissible on the

culture, habits, and psychology of gangs, because those subjects are "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a); People v. Olguin, supra, at p. 1370.) Expert testimony that a defendant is a gang member also falls in this category. (citations omitted.) However, "[e]xpert opinion is not admissible if it consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness." (People v. Torres, supra, at p. 45 [the jury was competent to determine whether robberies had been committed].) Under different circumstances, expert testimony may be required to show actions by certain individuals were for the benefit of a criminal street gang. (People v. Valdez, supra, at pp. 508-509 [expert testimony needed to explain how members of diverse gangs could have been acting for the benefit of a street gang]; People v. Gamez, supra, at p. 965 [expert testimony needed to explain relationship between two gangs whose members were present at the shooting, and the continuing criminality of one of those gangs].) The trial court has wide discretion to admit or exclude expert testimony, and appellate courts will not overturn its rulings on appeal absent an abuse of discretion. (citation omitted.)

[Petitioner] argues the court erred in admitting over defense objection expert testimony that [petitioner] had the required mental state, and legally and factually aided and abetted commission of the assault and battery. He complains the expert usurped the jury's responsibility to determine intent, and whether [petitioner's] actions made him an aider and abettor. We conclude that to the extent the court abused its discretion in admitting the expert testimony, [petitioner] was not prejudiced.

The parties' briefs summarize in detail the hearing on [petitioner's] in limine motions to exclude or limit testimony of prosecution expert Officer Michael Townes, and Townes's subsequent trial testimony. Defense argued unsuccessfully that anticipated expert testimony describing three motives for gang crime – reputation, retaliation, and profit – was inadmissible because it dealt with [petitioner's] state of mind. At trial, Townes added intimidation to his list of three motives for gang crime. He explained the need to maintain respect, stating that a gang member is viewed as a weak link if he allows disrespect to go unanswered. Townes also described the type of intimidation a gang would commonly use. We conclude Townes's testimony on the motives of gang crime was properly admitted to describe gang culture and psychology. (People v. Olguin, supra, 31 Cal.App.4th at p. 1370.)

Defense counsel also objected in limine to anticipated testimony that murder was a natural and probable consequence of gang retaliation, and the court limited the language the expert could use. At trial, the prosecutor asked: "Now, Officer Townes, based upon your training the experience and your participation in the

investigation of this case regarding the interviewing of witnesses, the speaking with the investigating officers and other members of law enforcement, and your review of the court documents, did you reach an opinion whether or not the death of Kenny Williams was, in fact, gang-related activity?"  Townes answered over objection, "It's my opinion that the incident I'm sitting up here testifying to, was definitely a gang-related incident."  He then recounted the facts of the case, including some facts not yet before the court. Again, we conclude expert testimony was required in this case to explain how [petitioner's] earlier confrontation with Williams, and subsequent loss of his gun, led [petitioner] and his fellow gang members to the King home on September 13, 1997.  The testimony also related to the central motives behind gang crimes.  Such matters were beyond the common experience of the typical juror. (citation omitted.)

[Petitioner] also asserts the court abused its discretion in permitting Townes to give his definition of aiding and abetting on cross-examination and redirect.  However, before allowing Townes to testify on his understanding of "aid" and "abet," the court made clear it would provide the jury with the legal definition of those terms.  On this record, we find no abuse of discretion.

Only one aspect of the expert testimony is problematical under the principles we have described.  In the following exchange, defense counsel objected to Townes's description of how various gang members assisted in the commission of the crime:

"[PROSECUTOR]: Q.  Officer Townes, how did the people who did not pull the trigger killing Kenny Williams, how did they aid and abet in the commission of the crime?

"[PETITIONER'S COUNSEL]: Again.  That's a legal conclusion. I will object.

".................................................................................................

"THE COURT: Well, he's qualified as an expert.  These are areas that an expert can testify to.  I will overrule the objection.

"[PROSECUTOR]: Q.  How do people who did not pull the trigger encourage the commission of that crime?

"[PETITIONER'S COUNSEL]: That assumed a fact not in evidence, and that calls – it's clearly inappropriate, I object.

"THE COURT: Well, again, based on the facts as he's related them, I will permit the answer.

/////

"THE WITNESS: It's my opinion that they aided and abetted by intimidation and also by driving at least two individuals out of the area.

"[PROSECUTOR]: Q.  And by beating Mr. Williams, did they incapacitate him and put him in a vulnerable position whereby he was more vulnerable to be shot?

"A.  Based on [the] circumstances, correct.

"Q.  By beating him did they prevent him from fleeing the shooting?

"A.  By the mere fact of the numbers, yes.

"A.  Did they assist in evidence not being recovered such as the gun?

"A.  Yes."

We do not believe the manner of intimidation, escape, or concealment of evidence involved here was beyond the jurors' common experience.  The jury was competent to determine from the evidence and the court's instructions whether [petitioner] aided and abetted the assault on Williams.  (People v. Torres, supra, 33 Cal.App.4th at p. 47.)  Accordingly, it was improper for the court to admit expert testimony on that issue.  However, we conclude [petitioner] was not prejudiced by the court's abuse of discretion. Properly admitted evidence supported the guilty verdict based on aider and abettor liability.

(Opinion at 22-27.)[10]

An evidentiary ruling, based on state law, may not be set aside in a federal habeas corpus proceeding unless it "render[ed] the state proceedings so fundamentally unfair as to violate due process." Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999).  See also Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993).  Due process violations warranting federal interference are found "only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that

---

[10]  In support of its conclusion that sufficient evidence supported the guilty verdict, the state appellate court referred to its previous summary of the evidence, set forth in these findings and recommendations on pg. 14.

1    fundamental fairness essential to the very concept of justice. . . ."  Pike v. Dickson, 323 F.2d 856,

2    860 (9th Cir. 1963).

3              The decision of the California Court of Appeal rejecting petitioner's claim of

4    evidentiary ruling error is not contrary to or an unreasonable application of these federal due

5    process standards.  After a review of the record in this case, including the jury instructions, this

6    court concludes that the admission of Towne's testimony, described above, did not render

7    petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on this

8    claim.[11]

9              5.  Motion To Strike Petitioner's Prior Juvenile Adjudication

10             The record reflects that petitioner's sentence was enhanced due to a prior juvenile

11   conviction, to which he pled guilty.  (CT at 667-73.)  Prior to sentencing, petitioner filed a

12   motion to strike this prior conviction.  (Id. at 659.)  In a declaration attached to the motion to

13   strike, petitioner declared that: (1) at the change of plea hearing, he did not specifically admit to

14   committing the crime for which he was convicted; (2) he was not "fully advised, informed, nor

15   did I understand my Constitutional rights . . . nor was I fully advised and informed of the

16   consequences;" (3) he did not expressly waive or understand his constitutional rights; and (4) he

17   would not have entered an admission to the charge if he had been fully advised of his

18   constitutional rights and the consequences of an admission.  (Id. at 666-67.)  The trial court

19   denied the motion to strike.  (RT at 2017.)

20   ───────────────

21       [11]  In the traverse, petitioner claims, for the first time, that prosecution expert Officer
     Townes violated his Fifth Amendment right against self-incrimination when he testified that
22   petitioner, who had "exercised his Miranda rights," admitted during custodial interrogation that
     he was a gang member.  (Traverse at consecutive p. 22.)  To the extent petitioner is attempting to
23   belatedly raise a claim in this manner, it should be denied on the grounds that it is impermissibly
     vague and conclusory, appears to be unexhausted, and may not be raised in the traverse.  See
24   Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th
     Cir. 1994) ("It is well-settled that '[c]onclusory allegations which are not supported by a
25   statement of specific facts do not warrant habeas relief'")); Cacoperdo v. Demosthenes, 37 F.3d
     504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for
26   relief); Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only
     issues which are argued specifically and distinctly in a party's opening brief").

1    In the instant petition, petitioner claims that the trial court erred in denying his

2  motion to strike his prior juvenile adjudication.  He contends that his guilty plea was involuntary

3  and uninformed.  Specifically, he argues that "he never admitted his guilt and did not personally

4  waive his constitutional rights.  Instead, the colloquy of the plea showed only an understanding of

5  what would occur in the future."  (Pet., Ex. B at 27.)

6    This court notes the following colloquy, which occurred during the change of plea

7  hearing:

8    THE COURT: Right.  All right.  Ricky, as I understand it, you're
    *going to admit* that on the 27th of August of this year, you did
9    commit a felony violation of Section 246 of the California Penal
    Code, shooting at an inhabited building or motor vehicle?
10

    THE DEFENDANT: Yes.
11

12  (CT at 670-71.) (emphasis added.)  After this exchange, the trial court advised petitioner that

13  "when" he admitted the charges, he would be giving up certain constitutional rights.  (Id. at 671.)

14  Petitioner affirmed that he understood the rights he was giving up.  (Id.)  At the end of the

15  hearing, the court accepted petitioner's plea.  (Id. at 672-73.)  Petitioner's claim appears to hinge

16  on the fact that the trial court's phraseology indicated that petitioner would be admitting guilt and

17  waiving his rights at some point in the future.  He argues that the record must show he

18  voluntarily pled guilty and waived his rights using the present tense.

19    Petitioner's challenge to his prior conviction is barred by Lackawanna v. Coss,

20  532 U.S. 394 (2001).  In Lackawanna the Supreme Court held that where, as here, a petitioner's

21  state court conviction was later used to enhance a criminal sentence, "the defendant generally

22  may not challenge the enhanced sentence through a petition under § 2254 on the ground that the

23  prior conviction was unconstitutionally obtained."  532 U.S. at 403-04.  See also Gill v. Ayer,

24  342 F.3d 911, 919 n.7 (9th Cir. 2003).  There are two exceptions to this general rule: (1) petitions

25  that challenge an enhanced sentence on the basis that the prior conviction used to enhance the

26  sentence was obtained in violation of the Sixth Amendment right to counsel, as set forth in

31

Gideon v. Wainwright, 372 U.S. 335 (1963); and (2) situations where a habeas petition directed at an enhanced sentence may effectively be the first and only forum available for review of the prior conviction.  Lackawanna, 532 U.S. at 404-05.  The record reflects that petitioner was represented by counsel in connection with his prior guilty plea.  Further, petitioner raised this challenge to his prior conviction in state court.  Accordingly, neither exception to the general rule applies and petitioner is precluded from collaterally attacking his prior conviction through a § 2254 petition.  See id. at 406.

    Petitioner's claim in this regard also fails even when considered on the merits.  A guilty plea must be knowing, voluntary and intelligent.  Brady v. United States, 397 U.S. 742, 747-48 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it."  Brady, 397 F.2d at 749.  In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the plea proceeding record when the plea is subsequently challenged in a collateral proceeding.  While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."  Id. at 74.  See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in habeas proceeding when pleading defendant was represented by counsel); Chizen v. Hunter, 809 F.2d 560, 561 (9th Cir. 1986).

    In Boykin, the United States Supreme Court held that the record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.  395 U.S. at 242-43.  In that case, the judge taking the plea asked no questions of petitioner concerning his guilty plea and petitioner did not address the court.  The Supreme Court concluded the record must reflect that a petitioner pleading guilty understands, and is voluntarily waiving, his rights to

the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers

and that the court would not presume waiver from a silent record.  Id.  In Brady the court, citing

Boykin, upheld a guilty plea as voluntary and intelligent even though the  defendant had not been

specifically advised of the three rights discussed in Boykin.  The court in Brady clarified the

holding of Boykin by stating, "the new element added in Boykin was the requirement that the

record must affirmatively disclose that a defendant who pleaded guilty entered his plea

understandingly and voluntarily."  397 U.S. at 747-48 n.4.  Thus, specific articulation of the

Boykin rights "is not the sine qua non of a valid guilty plea."  Wilkins v. Erickson, 505 F.2d 761,

763 (9th Cir. 1974).  Rather, if the record demonstrates that a guilty plea is knowing and

voluntary, "no particular ritual or showing on the record is required."  United States v.

McWilliams, 730 F.2d 1218, 1224 (9th Cir. 1984).

The California Court of Appeal rejected petitioner's challenge to his prior

conviction with the following reasoning:

> The transcript of the juvenile hearing shows [petitioner] personally
> waived the constitutional rights described by the court, when he
> acknowledged he understood "those rights are given up."  With
> respect to [petitioner's] admission to count two of the petition,
> counsel explained at the outset that his client was "prepared to
> make an admission to Count 2."  The court asked [petitioner]
> directly, "Ricky, as I understand it, you're going to admit that on
> the 27th of August of this year, you did commit a felony violation
> of Section 246 of the California Penal Code shooting at an
> inhabited building or motor vehicle?" [Petitioner] replied, "Yes."
> Counsel joined in [petitioner's] waiver of rights, and consented to
> the admission.  Although the language used by the court might
> suggest, in other circumstances, that the admission would come at
> a later point in the hearing, it is clear from the context that
> everyone, including [petitioner], understood what had transpired.

(Opinion at 28.)

The record of petitioner's plea taken in connection with his juvenile conviction is

part of the record before this court.  (CT at 670-73.)  After a review of that transcript, the

undersigned finds that petitioner intended to and did plead guilty at the hearing to the charge of

shooting at an inhabited building or motor vehicle and that his plea was voluntarily made, with

knowledge of the consequences thereof.  Accordingly, petitioner is not entitled to relief on this claim.

      6.  <u>Denial of the Right to a Continuous Preliminary Hearing</u>

          In his final claim, petitioner argues that he was improperly denied the right to a "continuous preliminary hearing" pursuant to Cal. Pen. Code § 861.[12]  The state appellate court denied this claim on state law grounds, essentially finding that petitioner was not prejudiced by the failure of the trial court to conclude his preliminary hearing within a ten day period.  (Opinion at 28-30.)

          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>Middleton</u>, 768 F.2d at 1085; <u>Gutierrez</u>, 695 F.2d at 1197.  It is unavailable for alleged error in the interpretation or application

---

[12]  That code section provides, in relevant part:

> The preliminary examination shall be completed at one session or the complaint shall be dismissed, unless the magistrate, for good cause shown by affidavit, postpones it. The postponement shall not be for more than 10 court days, unless either of the following occur:

> (1) The defendant personally waives his or her right to a continuous preliminary examination.

> (2) The prosecution establishes good cause for a postponement beyond the 10- court-day period. If the magistrate postpones the preliminary examination beyond the 10-court-day period, and the defendant is in custody, the defendant shall be released pursuant to subdivision (b) of Section 859b.

> (b) The preliminary examination shall not be postponed beyond 60 days from the date the motion to postpone the examination is granted, unless by consent or on motion of the defendant.

> (c) Nothing in this section shall preclude the magistrate from interrupting the preliminary examination to conduct brief court matters so long as a substantial majority of the court's time is devoted to the preliminary examination.

of state law.  <u>Middleton</u>, 768 F.2d at 1085; <u>see also</u>, <u>Lincoln v. Sunn</u>, 807 F.2d 805, 816 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).  Petitioner's claim in this regard is grounded in California law and is not cognizable in this federal habeas corpus proceeding.  For this reason, the claim should be denied.[13]

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2006.

UNITED STATES MAGISTRATE JUDGE

008:cobbs1529.hc

---

[13]  In the traverse, petitioner raises another unexhausted claim that the trial court violated double jeopardy principles when it relied on his juvenile conviction to double his sentence under California's Three Strikes Law.  To the extent petitioner is attempting to belatedly raise a claim in this manner, it should be denied.  <u>Cacoperdo</u>, 37 F.3d at 507; <u>Greenwood</u>, 28 F.3d at 977.